DECISION
Before this Court is a motion to dismiss an action seeking declaratory judgment and injunctive relief. The Town of Scituate (Town), a municipal corporation, as Plaintiff, sought declaratory and injunctive relief against Defendants EFC Construction Co. (EFC) and John J. Harrington (Harrington), who is the duly authorized representative of all owners of the property. The Estate of Joseph F. Harrington (Estate) is represented by Defendant Jesusa S. Harrigan (Administratrix), who is Administratrix of the Estate. Jurisdiction is pursuant to G.L. 1956 § 9-30-1 et seq.
 FACTS AND TRAVEL
The property in question contains approximately 25 acres of vacant land. The property is located in an RR 120 zone under the Town of Scituate Zoning Ordinances. Harrington is the owner of Lot 97 in Assessor's Plat 50, while the Estate owns Lot 78 in Assessor's Plat 50. EFC is the authorized agent of the owners of Lots 78 and 97 for purposes of application for a comprehensive permit under the Low and Moderate Income Housing Act (Housing Act) § 45-53-1 et seq.
EFC applied for a comprehensive permit to develop a residential subdivision with 20% of the units being reserved for low and moderate income persons under the Housing Act. EFC sought to build 25 single family detached three bedroom dwellings including five of which would be reserved for low or moderate income persons. EFC filed its application for a comprehensive permit on December 30, 2003. Due to the lack of specific forms available at the time, the application was submitted on a standard form ordinarily used for zoning relief such as variances or special permits.
The application was duly advertised in accordance with the Act and placed on the Town of Scituate Zoning Board of Review (Board) regular meeting agenda for January 27, 2004. At that meeting, EFC appeared and requested the hearing be rescheduled. The Board acknowledged receipt of the application, accepted four exhibits into the record, and informed EFC that an official application form was required. The Board then rescheduled the hearing for February 11, 2004. On February 5, 2004, however, the Rhode Island General Assembly passed legislation that included a moratorium on comprehensive permit applications submitted by "for profit" developers of low and moderate income housing projects. The bill took effect on February 13, 2004 according to § 45-53-4(d).
On February 11, 2004, the Board held the hearing regarding EFC's application for a comprehensive permit. At the hearing, the Board raised several questions, including whether the moratorium precluded EFC's application and whether the property in question was still subject to a condition imposed years earlier in conjunction with subdivision of the land. In 1975, the Town of Scituate Plan Commission granted a request to subdivide lots 96, 97, and 78 subject to the specific condition that no further subdivision would be permitted unless a road was built to provide lot 96 with access and frontage. No such road has ever been built on the property. At the close of the hearing, the Board voted unanimously to ask the Town, through the town solicitor, to seek a declaratory judgment in this Superior Court with regard to the two questions: applicability of the moratorium and availability of relief to the property given the unmet condition imposed by the Plan Commission.
The Town filed the present action seeking declaratory judgment on those two issues and also seeking injunctive relief in order to enjoin the Defendants from proceeding with any actual development through clearing of brush, etc. Defendants subsequently filed a motion to dismiss. This Court renders its decision herein.
 STANDARD OF REVIEW
The Uniform Declaratory Judgments Act (Declaratory Act), G.L. 1956 §9-30-1 et seq., grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." Section 9-30-1. The Declaratory Act also provides that the Superior Court may grant additional affirmative relief "based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." CapitalProps., Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999) (citing §§ 9-30-8,9-30-12; Sousa v. Langlois, 97 R.I. 196, 199, 196 A.2d 838, 841 (1964)). Section 9-30-2 provides, in part, that
 "any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
The purpose of the Declaratory Act is "to facilitate the termination of controversies." Capital Props. Inc., 749 A.2d at 1080. The decision to issue a declaratory judgment lies within the trial justice's discretion.Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) (citing WoonsocketTeachers' Guild Local Union 951 v. Woonsocket Sch. Comm., 694 A.2d 727, 729
(R.I. 1997)); Lombardi v. Goodyear Loan Co., 549 A.2d 1025, 1027 (R.I. 1988) (citing Employers' Fire Ins. Co. v. Beals, 103 R.I. 623, 628,240 A.2d 397, 401 (1968)). Section 9-30-12 provides that the Declaratory Act should be "liberally construed and administered." See also Taylor v.Marshall, 119 R.I. 171, 180, 376 A.2d 712, 716-17 (1977) (stating existence of alternate methods of relief, including administrative, do not preclude declaratory judgment).
 DECLARATORY JUDGMENT Standing of the Town
Defendants allege that the Town has no standing under the Housing Act, all authority and jurisdiction instead being vested in the Board. Defendants state that the Board is the only body with authority, assuming the authority of all other town boards when dealing with applications under the Housing Act. Defendants cite § 45-53-4 as stating that the Board is the only entity with an "interest" in connection to the development application.
Plaintiff argues that the Defendants confuse the application under the Housing Act with the present action for declaratory judgment under the Declaratory Act, stating that the Town has sought simply to address the moratorium, not to address the Defendant's application itself. Plaintiff also articulates that it may request guidance from the Superior Court through the town solicitor in order to represent the interests of the community. The Town argues it is a "person" under the Declaratory Act and therefore has standing to seek declaratory relief. Plaintiff also points out that the Board does not have standing under the Declaratory Act and cites Town of Coventry Zoning Bd. of Review v. Omni Dev. Corp.,814 A.2d 889 (R.I. 2003), for the proposition that a zoning board lacks standing to bring an appeal.
Under the Declaratory Act, a town qualifies as a person entitled to seek declaratory judgment. Section 9-30-13 provides that "[t]he word `person', wherever used in this chapter, shall be construed to mean any . . . municipal or other corporation of any character whatsoever." Thus, a town or municipal corporation is a "person . . . who . . . may have determined any question of construction or validity arising under the . . . ordinance. . . ." G.L. 1956 § 9-30-2.
Prior sections of the General Laws (§ 45-24-6 and § 45-24-7) "confer[red] upon the town council authority to invoke judicial assistance in the enforcement of local zoning ordinances. Such assistance is obtained by the institution of the appropriate action in the name of the municipality by the town solicitor." Town of Coventry v. HickoryRidge Campground, Inc., 111 R.I. 716, 720-21, 306 A.2d 824, 827 (1973). "[O]nly the town through its solicitor can initiate actions to enforce local zoning ordinances. . . ." Id. at 724, 828-29 (upholding Town ofLincoln v. Cournoyer, 95 R.I. 280, 186 A.2d 728 (1962)). Our own Supreme Court has "never departed from the statutory dictate that only the town has standing to initiate the action." Town of Charlestown v. Beattie,422 A.2d 1250, 1252 (R.I. 1980) (citing Hickory Ridge Campground, Inc.,supra and Cournoyer, supra.). The current General Laws provide that "[t]he city or town may also cause suit to be brought in the . . . superior court . . . in the name of the city or town, to restrain the violation of, or to compel compliance with, the provisions of its zoning ordinance." G.L. 1956 § 45-24-60(b). By implication, the town also has standing to seek declaratory judgment because "the superior court . . . shall, upon due proceedings in the name of the city or town, instituted by its city or town solicitor, have power to issue any extraordinary writ or to proceed according to the course of law or equity or both." G.L. 1956 § 45-24-62.
"Standing in zoning cases is accorded only to applicants who are aggrieved by the judgment to be reviewed either personally or `in an official capacity as a representative of the public.'" Barrington SchoolComm. v. R.I. State Labor Relations Bd., 120 R.I. 470, 474, 388 A.2d 1369,1372 (1978) (quoting Hassell v. Zoning Bd. of Review of City of EastProvidence, 108 R.I. 349, 351, 275 A.2d 646, 648 (1971)). When invoked in a zoning context the expanded interpretation of aggrievement can be either private or public. City of East Providence v. Shell Oil Co.,110 R.I. 138, 142-43, 290 A.2d 915, 917-18 (1972). "`[A]ggrievement' in the public sense occurs whenever there is a threat to the very real and legitimate interest which the general public has in the preservation and maintenance of the integrity of the zoning laws." Id. at 143, 918. "The Legislature . . . assigned responsibility for the protection of that public interest to the local government, and that government . . . becomes `aggrieved' in the broader or public sense whenever the public interest is affected by a zoning board's action." Id. (holding city solicitor was aggrieved person and had standing to appeal to Superior Court). Our Supreme Court further stated:
 "Zoning boards cannot claim to be aggrieved personally nor to represent the public in such matters since the statutory scheme delimiting the powers of zoning boards expressly provides that judicial aid in the enforcement of ordinances is to be sought only by cities or towns, acting through their solicitors, and not by zoning boards themselves." Barrington School Comm., 120 R.I. at 474, 388 A.2d at 1372.
"It seems clear that . . . a town solicitor properly represents the interest of the public in seeking judicial aid in a zoning matter. . . ."Id. at 474-75, 1372.
Section 45-53-4 of the Housing Act provides that "the local review board may request . . . statements and advice from other local boards and officials." G.L. 1956 § 45-53-4(a)(1)(xi). This provision explicitly permits a zoning board to seek the assistance of other town boards or officials when reviewing an application to develop low and moderate income housing such as the one in this case. The statute implicitly allows the zoning board to ask the town council or town solicitor to assist the zoning board by providing statements, which could be analogized to a declaration from a Court. If a local zoning board can request "statements and advice from other local boards and officials" under the Housing Act, the zoning board is not the only town board or official with an "interest" in the application as the Defendants allege. A zoning board cannot be the only party with an "interest" in the application for low and moderate housing developments under the Housing Act because a zoning board does not have the requisite standing to seek the assistance of the courts. Omni Dev. Corp., 814 A.2d at 896-97
(holding zoning board does not have standing to prosecute appeal to Supreme Court). Indeed, our Supreme Court explicitly favored the "city or town solicitor acting on the public's behalf" as the appropriate party to engage the judiciary. Id. at 897.
As discussed, the Town is the entity with standing to bring an action for declaratory judgment or any other relief. The Housing Act does not explicitly prohibit the Town from having standing nor does the Housing Act explicitly grant to the (zoning) Board all authority of the Town. G.L. 1956 § 45-53-1 et seq. While Omni Dev. Corp. stated that "the zoning board is vested with the same power and authority as the various local boards, including the city or town council" it was only in relation to "considering an application for a special exception to construct low and moderate income housing." 814 A.2d at 897. This Court notes that our Supreme Court made such a statement and then held that the zoning board, though "vested with the same power and authority as . . . the city or town council," does not have standing before the Court. See id. Thus, the Supreme Court was referring to the zoning board having the same authority to strictly review or "consider an application" but not authority to bring suit. See id. Here, the declaratory judgment action was filed in order to ascertain the applicability of the moratorium and obtain a declaration from the court about the legal effect of any conditions previously imposed on the land, not to entertain the comprehensive permit application itself. If the Board needed guidance as to how to apply the appropriate law to a permit application, it was most appropriate that it request the Town file declaratory judgment action in order to gain the assistance of this Court in doing so. Thus, the Board does not have standing and is not the only party with an "interest" under the Housing Act. Instead, this Court finds that the Town does, in fact, have standing to seek declaratory judgment under the Declaratory Act.
 Zoning Board as an Indispensable Party
Defendants argue that the action should be dismissed because the Plaintiffs failed to join an indispensable party, here the Board, and such a failure is fatal to the Plaintiff's claims under Rule 12(b)(7). Defendants again argue that the Board is the only municipal body authorized to rule on the application under the Housing Act and is, therefore, indispensable. Defendants cite G.L. § 9-30-11 and also Rule 19 as each requiring any party with an interest or who would be affected by the declaration to be joined.
The Plaintiff argues that Rule 19 does not require joinder of every potential party, but rather merely for those who are necessary for just and final adjudication. The Plaintiff alleges that the Board is not an indispensable party to the action, stating "all necessary parties were included in the original complaint." The Town also argues that Defendants have provided no support for how the joinder of the Board would effectuate "complete relief."
Courts have historically distinguished between indispensable parties and necessary parties. Anderson v. Anderson, 109 R.I. 204, 209-10,283 A.2d 265, 268 (1971) (citing Shields v. Barrow, 58 U.S. 130,15 L.Ed. 158 (1854)). The Rhode Island Supreme Court stated that though it could not "comply with the letter of the new Rule 19," it could "adhere to its spirit" through the adoption of a general definition of an indispensable party. Id. at 215, 271. According to our Supreme Court "true indispensable parties are only those whose interests could not be excluded from the terms or consequences of the judgment . . . as where the interests of the absent party are inextricably tied in to the cause . . . or where the relief really is sought against the absent party alone." Id. (quoting Stevens v. Loomis, 334 F.2d 775, 777 (1st Cir. 1964)) quoted in Root v. Providence Water Supply Bd., 850 A.2d 94, 100
(R.I. 2004). "Rule 19(a) provides . . . that `[a] person who is subject to service of process shall be joined as a party in the action if . . . in the person's absence complete relief cannot be accorded among those already parties.'" Root, 850 A.2d at 100 (quoting R.I. Sup. Ct. R. Civ. Pro. 19(a)). The "rules of civil procedure [should] be construed and administered `to secure the just, speedy, and inexpensive determination of every action.'" Carbone v. Planning Bd. of Appeal of Town of SouthKingstown, 702 A.2d 386, 389 (R.I. 1997) (citing R.I. Sup. Ct. R. Civ. Pro. 1). "When faced with a claim that a litigant has failed to join an indispensable party, a trial justice, whenever possible, should avoid dismissing the complaint; but, in any event, he or she must examine the case to determine whether it can proceed to judgment without adding the party in question." Root, 850 A.2d at 100-01 (citing Anderson,109 R.I. at 215-16, 283 A.2d at 271).
General Laws § 45-24-60 and § 45-24-62 both similarly state that the town solicitor, in the name of the town, may bring suit in Supreme or Superior Court in order "to compel compliance with" a zoning ordinance. Both of said provisions allow the town solicitor to seek judicial assistance in enforcing local zoning ordinances. The Town of Scituate Ordinances, Article I, § 5, provides for enforcement of zoning ordinances. The ordinance provides that "the town solicitor shall institute appropriate action in the Supreme or Superior Court to restrain the violation of, or to compel compliance with the provisions of this ordinance." Judicial aid in zoning enforcement is proper only when sought by cities and towns acting through their solicitors, not by the zoning board itself. E.g. Zeilstra v. Barrington Zoning Bd. of Review,417 A.2d 303 (R.I. 1980); Barrington Sch. Comm., 120 R.I. at 474,388 A.2d at 1372; Hickory Ridge Campground, Inc., 111 R.I. at 720-21,306 A.2d at 827; Lincoln v. Cournoyer, 95 R.I. 280, 186 A.2d 728 (1962). Thus, because the Town is charged with enforcement of compliance with the zoning ordinances while the Board is expressly denied such a role, the Board cannot be considered an indispensable party.
Section 9-30-11 provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Zoning boards are not considered "persons" under the Declaratory Act, and therefore, § 9-30-11
would not apply in such a way so as to require a zoning board be made a party for declaratory judgment. G.L. § 9-30-13. A municipal corporation or town is, however, a "person" under the Declaratory Act, and would, therefore, be the appropriate "person" to be joined as a party. The Housing Act specifically states that "[a]ny person aggrieved by the issuance of an approval may appeal to the supreme court." G.L. §45-53-4(a)(4)(x) (emphasis added.) A zoning board cannot be aggrieved personally, nor can it represent the interests of the public because the statutory scheme that created it did not grant such responsibilities.Barrington School Comm., 120 R.I. at 474, 388 A.2d at 1372. A zoning board is a quasi-judicial board that sits as part of the town's administrative body and, therefore, the town may act on the zoning board's behalf where the zoning board could not otherwise act. SeeHassell, 108 R.I. at 351-52, 275 A.2d at 648 (discussing role of zoning board).
 Applicability of Moratorium
Plaintiff brought this action for declaratory judgment at the request of the Board in order to gain judicial determination regarding the applicability of a moratorium. The moratorium is contained in § 45-53-4(b) and states:
 "(1) The general assembly finds and declares that in January 2004 towns throughout Rhode Island have been confronted by an unprecedented volume and complexity of development applications as a result of private for-profit developers using . . . this chapter and that in order to protect the public health and welfare in communities and to provide sufficient time to establish a reasonable and orderly process for consideration of applications . . . and to have communities prepare plans to meet low and moderate income housing goals, that it is necessary to impose a moratorium on the use of comprehensive permit applications as herein provided by private for-profit developers; a moratorium is hereby imposed on the use of the provisions of this chapter by private forprofit developers, which moratorium shall be effective on passage and shall expire on January 31, 2005 and . . . private for-profit developers may not utilize the procedure of this chapter until the expiration of the moratorium.
 (2) No for-profit developer shall submit a new application for comprehensive permits until July 1, 2005 except by mutual agreement with the local review board."
The General Assembly clearly expressed concern for the volume of comprehensive permit applications and imposed a moratorium on said permits until orderly procedures to deal with such applications could be implemented. The moratorium clearly bars applications by private for-profit developers only.
Nowhere in the statute's provisions which deal with the moratorium is the concept of retroactivity. Instead the provision states that "[n]o for-profit developer shall submit a new application" which signals a prospective, rather than retroactive scope. G.L. 1956 § 45-53-4(b)(2). At the same time, "[a] zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the city or town prior to enactment of the new zoning ordinance or amendment." G.L. 1956 § 45-24-44(a). This statutory provision also states that development applications, once submitted to the appropriate review board, "shall be reviewed according to the regulations . . . in force at the time the application was submitted." G.L. 1956 § 45-24-44(c). Thus, an application for a comprehensive permit should be reviewed under the applicable zoning laws as of the date it was submitted. G.L. 1956 §45-24-44; Littlefield v. Town of Lyman, 447 A.2d 1231 (Me. 1982). "[W]hen [our Supreme Court is] faced with statutory provisions that are in pari materia, we construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope." State v.Dearmas, 841 A.2d 659, 666-67 (R.I. 2004) (citing Shelter Harbor FireDist. v. Vacca, 835 A.2d 446, 449 (R.I. 2003); In re Ordinance Adopted byCity of Providence, 745 A.2d 769, 773-74 (R.I. 2000); and State v.Souza, 456 A.2d 775, 781 (R.I. 1983)); see also Theta Props. v. RonciRealty Co., 814 A.2d 907, 914 (R.I. 2003) (quoting Kaya v. Partington,681 A.2d 256, 261 (R.I. 1996) which states related statutes should be harmonized to have consistent meanings). "[T]he Legislature is `presumed to know the state of existing law when it enacts or amends a statute.'"Simeone v. Charron, 762 A.2d 442, 446 (R.I. 2000) (quoting ProvidenceJournal Co. v. Rodgers, 711 A.2d 1131, 1134 (R.I. 1998)). Thus, this Court finds that the moratorium in question, as enacted in § 45-53-4(b), does not apply retroactively in its prohibition of applications for development permits.
According to the record in this case, the comprehensive permit application which EFC filed was submitted on December 30, 2003. EFC used a generic zoning application when it submitted the comprehensive permit application, because at the time the Town had no set form specifically for comprehensive permits. Significantly, state law and local ordinance provided for such comprehensive permits at this time. Accordingly, EFC had to utilize the only application available to it at the time. Even though the precise form used may not have been facially appropriate, the substance of the application conformed with the requirements. Siegl v.Town Council Zoning Bd. of Review of North Kingstown, 75 R.I. 502,506-07, 67 A.2d 369, 371 (1949) (holding substance more important than form in evaluating application for zoning relief). Based on the evidence before it, this Court finds that EFC made a good faith attempt to submit an application for a comprehensive permit to develop low and moderate income housing.
The application should be reviewed based on the applicable law and ordinances in effect at the time of submission, in this case, December 30, 2003. G.L. 1956 § 45-24-44. Section 45-24-44(a) provides "[a] zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency . . . prior to enactment of the new zoning ordinance or amendment." The Town of Scituate Ordinances do not, however, define what constitutes a substantially complete application. "It is a well-settled principle in this jurisdiction that the rules of stautory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citingTown of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573 (1973) andNunes v. Town of Bristol, 102 R.I. 729, 737, 232 A.2d 775, 780 (1967));see also Denomme v. Mowry, 557 A.2d 1229, 1230-31 (R.I. 1989) (stating under statutory construction court must determine intent behind legislature's use of "street" in zoning ordinance). "When confronted with statutory provisions that are unclear or ambiguous, we must examine the statutes in their entirety in order to glean the intent and purpose of the Legislature." Town of North Kingstown v. Albert, 767 A.2d 659, 662
(R.I. 2001) (citing In re Advisory Opinion to the Governor, 668 A.2d 1246,1248 (R.I. 1987)). The term "substantially complete" is not defined in the statute nor in the local ordinance, and therefore, this Court will look to its ordinary and plain meaning. Webster's Dictionary (5th ed., 1997) defines the term "substantial" to mean "material," "important," and "essential;" while the term "complete" is defined as "having all parts or elements."
In addition, the courts "are required to resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use her property as she wishes." Denomme,557 A.2d at 1231. Here, the property owners have assented to the EFC application for development of the property in question. Consequently, the interpretation of the term "substantially complete" should be determined in favor of EFC and the property owners. Furthermore, in its decision order dated December 29, 2004, the State Housing Appeals Board found that "the application for a comprehensive permit is substantially complete" and "the zoning board of review acted in a manner demonstrating that it considered the application substantially complete for the purposes of reviewing the application." Accordingly, this Court finds that the comprehensive permit application was substantially complete.
The moratorium was passed on February 5, 2004 and went into effect on or about February 13, 2004. Even before the moratorium was enacted, the Board both accepted the application and placed it on the regular meeting agenda. The Board held a meeting on January 27, 2004 and received four exhibits into the record in conjunction with EFC's application, though no actual hearing took place. The hearing was rescheduled and did take place, on February 11, 2004, just days after the enactment of the moratorium and days before it went into effect. Accordingly, the Board had not only accepted the application, but was moving forward with its evaluation of the application. In addition, the application contained the necessary information, but was simply not written on what amounted to the appropriate form because none was available at the time. Between submitting substantively appropriate information and going before the Board for a hearing which also accepted evidence for review, the application must be deemed substantially complete under the statute. See
G.L. 1956 § 45-24-44. EFC's comprehensive permit application was filed prior to the moratorium being enacted and, therefore, should be evaluated based on the law in place at that time. This Court finds that the moratorium does not bar EFC's application for a comprehensive permit, and this Court hereby declares that the application should be evaluated based on the law at the time of submission as if there were no moratorium enacted.
 Prior Condition Imposed on the Property during Subdivision
Plaintiff seeks declaratory judgment as to whether relief is available to the subject property where it is subject to an unmet condition imposed by the Town Plan Commission decades earlier. The condition was imposed when the lots were subdivided, requiring construction of a road prior to any additional subdivision or development on the subject properties. The road upon which development was conditioned has not been constructed.
The minutes of the Board's hearing indicate that the Board acknowledged the existence of a condition that was imposed during subdivision approval for the subject property. The minutes from the February 11, 2004 Board meeting state:
 "Chairman Sprague explained that in 1975 the owner of the property wanted to create 2 lots. They could build on one lot, but before they could build on the other they had to build a road because it was a landlocked lot. They build a house but never went for the second. The Tax Assessor has flagged these lots unbuildable until that lot's road got put in. It's been like that for 28 years.
 . . .
 Mr. Landry stated that this is addressed throughout the plans. Obviously we are well aware of that condition through the title work that identified it last May. The condition was that there would [be] no further development on this tract without a road being built.
 . . .
 The subdivision plans propose a town-approved road. Mr. Landry stated that the applicant is proposing a road and asking the town to approve it." (Zoning Bd. Tr. February 11, 2004.)
The condition imposed by the Plan Commission is analogous to any other condition imposed on the grant of administrative relief, whether before a Plan Commission, Zoning Board, or any administrative board. As such, "the doctrine of administrative finality bars a subsequent application for the same relief absent a showing of a change in material circumstances in the time intervening between the two applications." Audette v. Coletti,539 A.2d 520, 521-22 (R.I. 1988) (citing Marks v. Zoning Bd. of Review ofProvidence, 98 R.I. 405, 203 A.2d 761 (1964)); see also JohnsonAmbulatory Surgical Assocs. v. Nolan, 755 A.2d 799 (R.I. 2000) (reaffirming administrative finality as bar to subsequent applications). In Audette, Coletti, who was the successor in interest, was bound by restrictions accompanying a special exception granted to the original property owners. Coletti was required to demonstrate "a substantial or material change in circumstances" but failed to do so, and was required to abide by the original conditions attached to the special exception.Id. at 522. Our Supreme Court stated that it would "not allow a land owner, through the simple expedient of allowing a special exception to lapse, to evade conditions previously imposed without showing a change in circumstance to warrant departure from a prior administrative order."Id. The Plan Commission is the proper board to act in imposing conditions on the subdivision of the subject property because it has jurisdiction over all subdivision matters. Sugarman v. Lewis, 488 A.2d 709 (R.I. 1985) (reviewing well-settled case law granting authority over subdivision to planning boards) Thus, in the case at bar, this Court finds that the condition imposed by the Scituate Plan Commission in 1975 during subdivision of the subject lot is still in effect and must be complied with. Compliance with said condition shall be a determination left to the discretion and judgment of the Scituate Zoning Board of Review.
 INJUNCTIVE RELIEF
Plaintiff sought injunctive relief as part of its action for declaratory judgment. The Town sought to enjoin Defendants from: "any activity related to clearing brush, trees, placing of stakes, fence posts and any other objects in and around" the subject property while the declaratory judgment claim is pending; and "filing applications, petitions and other documentation related to construction on Carpenter Road on the [subject] lots referred to until this court has rendered a decision as to the applicability of the moratorium on the EFC application and as to the availability of relief on the Property." (Compl. at 3). Plaintiff argues that, if granted, the injunction would merely preserve the status quo by prohibiting work on the property where no permit to do so has yet been granted.
Defendants argue that injunctive relief should be denied on the grounds that Plaintiff, in its prayer for same, has failed to state a claim upon which relief can be granted. Defendants argue that they should not be enjoined from clearing brush or placing stakes or fence posts on their own property. Defendants opine that no extant legal theory supports such a restriction.
When deciding a request for injunctive relief, a trial justice must consider:
 "(1) whether the moving party has established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to preserve the status quo ante." Sch. Comm. of North Kingstown v. Crouch, 808 A.2d 1074, 1077 (R.I. 2002); Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999); Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d 517, 521
(R.I. 1997). General Laws § 45-24-62 provides that the Superior Court has the power to proceed under law or equity in actions instituted by the solicitor in the name of any city or town. Rule 65 of the Rhode Island Superior Court Rules of Civil Procedure governs injunctions. It provides that the court has discretion regarding whether to hear the preliminary injunction or not, and if the court does hear it, the court may order the consolidation of the injunctive relief hearing with the trial of the action on the merits. R.I. Sup. Ct. R. Civ. Pro. 65(a)(2). A claim for injunctive relief may be joined to a claim for declaratory judgment because of liberal joinder provisions in Rules 18 and 20. Gomes v. Wall, 831 A.2d 817, 821 (R.I. 2003) (citing Parente v. Southworth, 448 A.2d 769, 772 (R.I. 1982)). But see Shipyard Drive-In-Theatre, Inc. v. Scuncio; 107 R.I. 554, 268 A.2d 820 (1970) (holding injunctive relief cannot be granted under declaratory judgment statute); Traveler's Ins. Co. v. Nastari, 94 R.I. 55, 177 A.2d 778
(1962) (holding grant of injunctive relief in declaratory judgment action improper). General Laws § 45-24-60(b) states that "[a] city or town may consolidate an action for injunctive relief . . . in the superior court of the county in which the subject property is located."
In this case, the Plaintiff (Town) filed a complaint containing two counts, one for declaratory judgment and the other for injunctive relief. This Court, in its discretion, hereby consolidates the prayer for injunctive relief with the action seeking declaratory judgment. This Court now renders its decision on the petition for the injunction consistent with the declaratory judgment.
In this action, the Town has sought declaratory judgment and this Court holds that the moratorium does not bar the application. The relief sought was for an injunction to prevent any progress or work from occurring while the declaratory judgment action was pending and until applicability of the moratorium was determined. Thus, the claim for injunctive relief is essentially moot as the moving party has not established a reasonable likelihood of success on the merits. This Court finds that the moratorium does not bar the application; therefore, the Town would not be successful on the merits of such an argument. Consequently, the injunctive relief must be and is hereby denied.
 CONCLUSION
For the reasons stated above, this Court finds that the Town does in fact have standing to seek declaratory judgment on zoning matters. In addition, the Board is not an indispensable party to the lawsuit and need not have been joined to the action. The Defendant's motion to dismiss is, therefore, denied.
This Court also finds that the moratorium does not bar EFC's application for a comprehensive permit to develop low and moderate income housing. The prior condition imposed during subdivision is hereby deemed valid and must be complied with, as determined by the Board.
This Court hereby denies the injunctive relief prayed for by the Plaintiff.
Counsel shall submit an appropriate order consistent with this opinion.